UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
KIM CARL,                                                   :
:
                             Plaintiff,    :
:      04 Civ. 7031 (SCR)
   -v.-                                                      :
:      **OPINION AND ORDER**
:
THE CITY OF YONKERS, THE CITY OF                            :
YONKERS POLICE DEPARTMENT,                                  :
P.O. McCORMACK, P.O. MAHONEY,                               :
P.O. CAMPANA, P.O. CUSICK,                                  :
P.O. McGOVERN, P.O. DEMCHACK, and                           :
P.O. McINTYRE,                                              :
:
                           Defendants.   :
:
------------------------------------------------------------x

Menez Jean-Jerome, Jamaica, NY, for plaintiff.

Frank J. Rubino, Corporation Counsel (by Joseph T. Bonanno), Yonkers, NY, for defendants.

GERARD E. LYNCH, District Judge:

      Defendants in this civil rights action move for dismissal of the complaint for lack of personal jurisdiction, and for summary judgment.[1] The motion will be granted.

## BACKGROUND

      Plaintiff Kim Carl initially filed this action pro se on September 1, 2004, asserting claims against the City of Yonkers, the City of Yonkers Police Department ("the Department"), and

---

[1] Due to an extreme backlog in the White Plains Division of this Court, this matter was recently assigned by the Chief Judge to the undersigned judge, solely for purposes of deciding the instant long-pending motion, with the gracious consent of the Honorable Stephen C. Robinson, United States District Judge, to whom this case is otherwise assigned. The case remains assigned to Judge Robinson for all other purposes, with the exception of any motion for reconsideration of this Opinion and Order.

seven Yonkers police officers for false arrest, the use of excessive force, and retaliation for filing an earlier lawsuit, arising from Carl's arrest on September 6, 2001. The Court's file does not contain, and the docket sheet for the case does not reflect the filing of, any affidavit of service on any of the defendants. On September 23, 2004, the Corporation Counsel of the City of Yonkers filed an answer on behalf of the City and the Department, asserting that the Court lacked personal jurisdiction over the Department and that the Department was not a suable entity (in addition to various other defenses on behalf of both defendants). No defense of lack of personal jurisdiction over the City of Yonkers itself was asserted. No answer was filed on behalf of the individual defendants, nor does the file contain any other notice of appearance on the part of the Corporation Counsel or any other lawyer representing those defendants.

On December 28, 2004, attorney Menez Jean-Jerome entered an appearance on behalf of plaintiff Carl, and on February 18, 2005, through counsel, Carl moved for leave to file an amended complaint. The case was then referred to the Honorable Mark D. Fox, United States Magistrate Judge, for all pretrial proceedings.

On October 31, 2005, Judge Fox ruled on the motion to file an amended complaint. The Court rejected as futile plaintiff's efforts to sue for false arrest, given that he had been convicted in the case resulting from his arrest. (10/31/05 Tr. 8.) It also rejected plaintiff's claim against the City of Yonkers based on Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978), finding that the allegations that the City had failed to train its officers were inadequate to state a claim. (10/31/05 Tr. 8-9.) The Court also rejected plaintiff's claim for injunctive relief. (Id. 9-10.) However, the Court found that the proposed amended complaint adequately set forth a claim for excessive force. (Id. 9.) Accordingly, the Court ruled that "the motion to amend the complaint

is granted only to the extent of raising the 1983 claims based on excessive force and is denied in all other respects." (Id. 10.) With respect to the false arrest claim, the denial was expressly without prejudice to reasserting such claims if "plaintiff's convictions are reversed by the state appellate court." (Id.) So far as the docket reflects, the City and Department did not answer this complaint, presumably because the only claim left in the case by the Magistrate Judge's rulings did not apply to them.

Plaintiff did not seek review of this ruling by the assigned District Judge. Instead, on December 12, 2005, plaintiff filed a *second* amended complaint, without leave of the Court, reasserting his claims for excessive force, false arrest, and Monell liability, and adding pendent state law claims for various torts. The City promptly moved to strike this pleading in its entirety, as an unauthorized amendment of the complaint. Judge Fox held oral argument on the motion, and rendered a written decision granting the motion to strike on April 27, 2006. The Court ruled (1) that service of the complaint violated Rule 15; (2) that the plaintiff's Monell and false arrest claims had already been stricken from the amended complaint; (3) that the intervening affirmance of plaintiff's conviction ended any prospect of adding a false arrest claim; and (4) that the pendent state law claims that plaintiff had asserted for the first time in the purported second amended complaint were barred by the statute of limitations. (Order of Apr. 27, 2006, at 4-6.) Accordingly, the Court adhered to its prior ruling with respect to the first amended complaint, and granted the motion to strike the second amended complaint in its entirety. Lest there be any misunderstanding about the effect of that ruling, the Court made clear that "the only claim on which [p]laintiff may proceed is his claim of excessive force under § 1983 against the individual police officers." (Id. 6.) The Court was similarly explicit about the operative

3

pleading in the case: "Because [p]laintiff submitted a proposed amended complaint with his motion for leave to amend . . . , there was no need for [p]laintiff to file a second amended complaint." (Id. 4 n.2.) Once again, plaintiff did not seek review of this decision by the assigned District Judge.

Thus, as of June 2, 2006, when the reference to the Magistrate Judge was closed and the case returned to the District Court, it was crystal clear that the operative complaint was the first amended complaint, but only insofar as it asserted claims for the use of excessive force by the individual officer defendants. Although the City of Yonkers and its Police Department had thus effectively been dismissed from the case, and never filed an answer to this complaint, the Corporation Counsel continued to appear on their behalf, opposing repeated motions by plaintiff before the Magistrate Judge and the District Judge to extend the discovery period and to transfer the case to the Manhattan Division of the Court. So far as this Court has been able to determine, whenever defense counsel filed papers or appeared in court, he identified himself as counsel for the City of Yonkers and the City of Yonkers Police Department.

When all of these preliminary motions had been cleared away, on July 17, 2007, defense counsel filed a "motion for dismissal of the plaintiff's complaint for lack of personal jurisdiction and [s]ummary [j]udgment." (Declaration of Joseph T. Bonanno, dated July 13, 2007, ¶ 2.) Identifying himself as "attorney for the defendants[] in this matter" (id. ¶ 1), counsel submitted a memorandum of law arguing that the Court "lacks personal jurisdiction over the individual defendants" (D. Mem. 7), because none of the officers had been personally served, and indeed, that none of the individual defendants "had any knowledge regarding the subject lawsuit, up to the point that they were requested to submit affidavits in support of this motion" (id. 9); that the

4

Department is not a proper party and should be dismissed from the suit (id. 10); and that summary judgment in favor of the City of Yonkers was proper because the plaintiff's Monell claim had never been properly asserted and in any event was without merit (id. 12).

Plaintiff opposed the motion, principally addressing the merits of the excessive force claim, and arguing briefly, and without the submission of supporting evidence, that the City should be found liable because the City "has created policies that encourage discrimination against certain social groups," and "has the custom of overlooking complaints of use of excessive force by its police officers." (P. Mem. 5.)  With respect to the service issue, plaintiff argued that the summons and complaint had been "served on the defendant officers via the Yonkers Police Department," and that it would be "reasonable to assume that the [Department] would turn over those legal papers to each individual officer." (Id. 4.)  Plaintiff further noted that "at the time the summons was served," plaintiff was an incarcerated prisoner who was proceeding pro se. (Id.)[2]

## DISCUSSION

The events described above reflect an extraordinary record of ineffectiveness on the part of plaintiff's attorney.  Entering the case only a few months after the complaint was filed by an incarcerated pro se litigant, plaintiff's counsel neglected to determine whether the complaint had ever been properly served, and took no steps himself to effectuate proper service.  Over the course of several years of litigation, counsel appears never to have noticed that the individual

---

[2] Plaintiff subsequently filed an additional motion to be permitted to supplement his opposition by submitting additional medical records.  Plaintiff offers no explanation for the failure to include these records in the initial submission, and in any event the records are entirely irrelevant to the bases for defendants' motion.  Nevertheless, as the Court has in any event examined the records in the course of assessing the motion, the application is granted.

defendants did not appear in the case or file an answer. When the individual defendants finally moved for dismissal for failure of service, counsel filed an opposition brief that addressed the issue in a mere two paragraphs, without citation to legal authority and without submission of any affidavit or other evidentiary matter substantiating the facts asserted by counsel in the memorandum of law. With respect to the municipal defendants, counsel has filed an unauthorized amended complaint, and continues to argue for liability on the part of the City of Yonkers, without even acknowledging the fact that the claim was rejected by the Magistrate Judge and has been out of the case for two and a half years. Nevertheless, the Court must address the record as it finds it. And on the record as it exists, there simply is no lawsuit left in this case.

**I.      The City of Yonkers**

It is firmly established law that a municipality cannot be held liable under 42 U.S.C. § 1983 for the constitutional violations committed by its employees simply on the basis of respondeat superior. Ricciuti v. New York City Transit Authority, 941 F.2d 119, 122 (2d Cir. 1991). Liability attaches only if the violation of the plaintiff's rights resulted from a municipal custom or policy. Monell, 436 U.S. at 694.

Plaintiff's original pro se complaint named the City of Yonkers as a defendant, but (understandably on the part of a layperson not familiar with technical doctrines of municipal liability) simply alleged abusive actions by a number of Yonkers police officers, without making any attempt to allege the existence of any policy or custom that led to those actions. That complaint thus did not state any claim against the City under § 1983.

Apparently recognizing this defect, upon entering the case plaintiff's counsel sought to amend the complaint to allege a basis for liability under Monell.  However, Judge Fox found the allegations insufficient, and denied leave to amend with respect to the Monell claim.  (10/31/05 Tr. 8-9.)  When plaintiff tried again, filing a second amended complaint without leave of Court, Judge Fox rejected the filing as unauthorized, adhered to his prior rulings, and expressly held that the operative pleading in the case was the plaintiff's first amended complaint, modified to delete those claims rejected in the Court's ruling on the original motion to amend.  Judge Fox went on to make painfully clear that "the only claim on which [p]laintiff may proceed is his claim of excessive force under § 1983 against the individual police officers."  (Order of Apr. 27, 2006, at 6.)  Plaintiff never appealed this ruling or sought further leave to amend his complaint.  Thus, for more than three years, no claim against the City of Yonkers has been pending.  To the extent that the City remains a defendant in the caption, the remaining allegations clearly do not state a claim against the City.

The one-paragraph defense of his claim against the City in plaintiff's brief in opposition to defendants' summary judgment motion (P. Mem. 5) is both procedurally and substantively insufficient.  It is well established that allegations in briefs cannot supply defects in pleadings.  Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).  Moreover, twenty-year old findings of housing discrimination by the City (P. Mem. 5, citing United States v. Yonkers Bd. of Educ., 837 F.2d 1181 (2d Cir. 1987)) and conclusory allegations by counsel that the City "has the custom of overlooking complaints of use of excessive force by its police officers" (P. Mem. 5) are no substitute for evidentiary submissions on a motion for summary judgment filed long after the conclusion of discovery in a case that has been pending for over four years.  Fed. R.

Civ. P. 56(e)(2) (A party opposing summary judgment "may not rely merely on allegations or denials," but instead "must – by affidavits or as otherwise provided by this rule – set out specific facts showing a genuine issue for trial."). Accordingly, the complaint must be dismissed as against the City of Yonkers.[3]

## II.    The Individual Defendants

As Judge Fox correctly ruled, plaintiff's amended complaint clearly states a claim for excessive force against the individual police officer defendants. Neither that complaint nor the original pro se complaint, however, was ever properly served on those defendants. They thus have never become parties to the action. The individual defendants appeared for the first time in the action on or about July 16, 2007, nearly three years after the action was filed, and then only to seek dismissal of the complaint for failure to serve them.

Rule 4(m), Fed. R. Civ. P., requires that if a defendant is not served within 120 days of the filing of a complaint, "the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." A reasonable extension of time to serve must be granted "if the plaintiff shows good cause for the failure." Id. The record is clear here that the individual defendants were not served within the time limit, and plaintiff never sought an extension of time to serve them.

---

[3] To the extent that plaintiff seeks to proceed against the City of Yonkers Police Department as a separate defendant, the action fails for an even more fundamental reason. Under Rule 17(b)(3), Fed. R. Civ. P., a party's capacity to be sued is determined by the law of the forum state. Under New York law, municipal departments such as the Yonkers Police Department, "which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued." Fanelli v. Town of Harrison, 46 F. Supp. 2d 254, 257 (S.D.N.Y. 1999) (citing cases). At any rate, plaintiff makes no attempt to respond to defendants' motion to dismiss all claims against the Department as a separate entity, and thus must be held to have abandoned those claims.

As noted above, the docket for the case does not reflect the filing of proof of service on any of the individual defendants. Plaintiff provides no affidavit or other evidence that any defendant was properly served. The only record with respect to any attempted service is provided by the defendants. According to an affidavit from Michael Levinson, an Associate Corporation Counsel for the City of Yonkers, on October 6, 2004, he was called to the desk of the receptionist of the Corporation Counsel's office in the Yonkers City Hall, where an African-American woman[4] gave him nine copies of the summons and complaint in this matter. (Bonanno Decl. Ex. CC ¶ 4.) Levinson expressly advised the woman that he could only accept service on behalf of the City of Yonkers, and that he was "not authorized to accept [service of the papers] . . . on behalf of any of the seven individually named police officers." (Id. ¶ 5.)[5]

This service was not adequate to serve the individual officers. Rule 4(e), Fed. R. Civ. P., permits service by any means authorized by state law, Rule 4(e)(1), or by certain additional means specified in Rule 4(e)(2). None of these methods were utilized in this case. The officers were not served personally, Rule 4(e)(2)(A), nor (as none of the defendants lived at Yonkers City Hall) were copies of the summons and complaint left with a person of suitable age and discretion at their usual place of abode, Rule 4(e)(2)(B), nor were copies served on an authorized agent of the defendants, Rule 4(e)(2)(C). New York State law permits service by delivery of the

---

[4] Defendants state that this woman was "believed to be Martha DeBerry, the plaintiff's mother." (D. Mem. 4.) No reason for this belief is stated, nor does anything in the record support it.

[5] The plaintiff could have increased the chances of proper service being made by asking the Court to direct that service be made by the United States Marshals Service. See Rule 4(c)(3), Fed. R. Civ. P. But this service is not provided automatically; it must be requested by the plaintiff. Nagy v. Dwyer, 507 F.3d 161, 163-64 (2d Cir. 2007). The record does not reflect any request for service by the marshals.

summons and complaint to a person of suitable age and discretion at the defendant's "actual place of business," and then mailing copies to the person at his last known residence or at his actual place of business. N.Y. C.P.L.R. § 308(2). But it is undisputed that none of the officers were assigned to work at either the corporation counsel's office, or at the office of the Yonkers Police Commissioner, to which copies of the summons and complaint were apparently later mailed (D. Mem. 8). (See Bonanno Decl. Exs. V, W, X, Y, Z, AA, BB (affidavits of individual defendants).)[6] Proper service was thus never effected on any of the individual defendants.

Plaintiff's argument that "[t]he summons and complaint were served on the defendant officers via the Yonkers Police Department," and that it "would be reasonable to assume that the Yonkers Police Department would turn over these legal papers to each individual officer" (P. Mem. 4) simply does not address the legal requirement of service. The Second Circuit has "reject[ed] the notion that 'actual notice' suffices to cure a void service." National Development Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991). It follows that service in violation of the rules is void even if such service is reasonably calculated to provide actual notice.

Nor does plaintiff tender any reason for the failure to serve these defendants that could remotely serve as "good cause" for the failure to serve them for nearly three years after the complaint was filed. Indeed, plaintiff does not ask the Court, even at this late date, for an extension of time to serve the defendants; plaintiff simply argues, erroneously, that service was proper, or implicitly suggests that the Court should disregard the failure to serve defendants. Plaintiff alludes to his "incarcerated and pro se" status "at the time the summons was [attempted

---

[6] There is no record of any of the other methods of service provided for by N.Y. C.P.L.R. § 308, nor was any application made to the Court to permit a substitute method of service as permitted by § 308(5).

to be] served on the defendant officers." (P. Mem. 4.) If plaintiff had remained unrepresented, this argument might have some equitable appeal, although the cases are legion that pro se status does not excuse a failure to follow clearly-enacted rules of court. See, e.g., McNeil v. United States, 508 U.S. 106, 113 (1993); LoSacco v. City of Middletown, 71 F.3d 88, 92 (2d Cir. 1995); Edwards v. I.N.S., 59 F.3d 5, 8 (2d Cir. 1995).

But plaintiff was not unrepresented for long. Counsel entered an appearance for plaintiff on December 28, 2004, less than four months after the pro se complaint was filed, and well within Rule 4(m)'s time limit for effecting service of process. There is no excuse for the failure of a licensed attorney to determine whether the defendants named in the complaint had been properly served.

And it would have been apparent to any competent attorney that service had not been accomplished. Had counsel interviewed his client to determine who, if anyone, had served the defendants, he could quickly have learned what steps had been taken, and established their inadequacy under the law to effect service. The docket of the case makes clear that only one answer was filed in the case,[7] and that answer makes clear on its face that it was filed on behalf of "[d]efendants the City of Yonkers and the City of Yonkers Police Department by their attorney, Frank J. Rubino, Corporation Counsel for the City of Yonkers." (Answer at 1.) On every brief and paper subsequently filed by Corporation Counsel, and at every court appearance the transcript of which appears in the record of the case, the assigned Assistant Corporation Counsel was careful to note his appearance only on behalf of these defendants. Until the filing

---

[7] Indeed, the answer is the docket entry immediately preceding the notice of appearance by plaintiff's counsel. The only other entries on the docket sheet at that time were the complaint and the assignment of a magistrate judge to the case.

of the instant motion, no appearance was ever entered or document filed in the case on behalf of the individual defendants. If counsel actually believed that defendants had been properly served, it is inexplicable why he did not seek a default judgment against them, as it is manifest that they have never responded to the complaint in any way.

Since the individual defendants were not served, it is the Court's duty under Rule 4(m) either to dismiss the complaint without prejudice, or to order that service be made within a specified time. While the Court *must* grant an extension where good cause for the failure to serve is shown, plaintiff has made no effort to show good cause. Nor could he: the failure to effect proper service is solely the result of his attorney's negligence in failing to determine whether service on the individual defendants had been properly made, or to take any action in the nearly three years before this motion was made to ascertain the status of those defendants or seek an extension of time in which to serve them.

Where good cause for the failure to serve the defendants has not been shown, the Court still has discretion to grant an extension. Zapata v. City of New York, 502 F.3d 192, 193 (2d Cir. 2007). The Court declines to do so here. Zapata provides an instructive precedent. In that case, as in this one, the plaintiff claimed to have been assaulted by a law enforcement officer, and sued both the City of New York and the individual officer. In response to plaintiff's request, counsel for the City provided plaintiff's counsel with the officer's work location. The plaintiff nevertheless failed to serve the plaintiff until four days after the 120-day period provided by Rule 4(m) – and 84 days after the statute of limitations had passed. The district court dismissed for failure of timely service. On appeal, the Second Circuit held that

> Where, as here, good cause is lacking, but the dismissal without
> prejudice in combination with the statute of limitations would

> result in a dismissal *with* prejudice, we will not find an abuse of
> discretion in the procedure used by the district court, so long as
> there are sufficient indications on the record that the district court
> weighed the impact that a dismissal or extension would have on
> the parties.

Id. at 197 (footnote omitted).

Here, as in Zapata, the three-year statute of limitations applicable to § 1983 actions in New York, see Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002), had passed by the time the instant motion was made. Plaintiff would thus be significantly prejudiced by the dismissal of the present action; even though the dismissal would be formally without prejudice, as a substantive matter any new action would presumably be time-barred. Cf. Zapata, 502 F.3d at 197 ("the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice"). Corresponding prejudice, however, would also affect the defendants. Defendants aver that they have never received copies of the complaint, they have never participated in this action, and (as in Zapata, id. at 198) there is no indication in the record that they had notice of it. To permit an extension of the service period now, *sua sponte*, more than four years after the complaint was filed, would require defendants to defend a lawsuit based on actions taken more than seven years ago. Having failed to file this action until the statute was about to run, plaintiff had even more reason to seek a timely extension of the time for service of process. Instead, the time during which the statute was tolled by the period for service of process[8] itself ran out nearly three years ago.

---

[8] See Zapata, 502 F.3d at 194 n.4:

> "[T]he statute of limitations for the underlying claim is tolled
> during [Rule 4's 120-day service] period." Frasca v. United States,
> 921 F.2d 450, 453 (2d Cir.1990). But if the plaintiff's action is

Unlike the plaintiff in Zapata, plaintiff here did make an effort, while he was unrepresented, to effect timely service. However, that fact is counterbalanced by the fact that the effort was unsuccessful, and that plaintiff here, while represented by counsel, made no further effort to serve the individual defendants or to ascertain their status in the case. Unlike the plaintiff in Zapata, plaintiff here made no effort to inquire as to the defendants' actual work locations so as to be able to serve them properly. Nor did he seek any extension of time. And most egregiously, unlike the plaintiff in Zapata, who ultimately served the defendants only four days beyond the service deadline, plaintiff here *never* effected proper service on the defendants, in the nearly *three years* that this case was pending before the instant motion to dismiss was made. In affirming the dismissal in Zapata, the Court of Appeals noted that plaintiff there had "waited two months to seek an extension *nunc pro tunc* after receiving the City's motion to dismiss." Id. at 199. Here, plaintiff has *never* sought an extension, although the defendants' motion has been pending for more than a year. Ultimately, as the Second Circuit noted in Zapata, "no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect." Id. at 198.

Were plaintiff unrepresented in this matter, it would be reasonable to question whether the Corporation Counsel or the Court should have made affirmative efforts to protect his rights in this matter. The Court could have advised plaintiff that the complaint had not been served on

---

dismissed for a failure to serve within 120 days, "the governing statute of limitations again becomes applicable, and the plaintiff must refile prior to [its] termination . . . ." Id.

14

the individual defendants, and set a deadline for such service to be effected,[9] or the Court could have suggested to the plaintiff that a subpoena could be served on the City to obtain information about the homes or duty stations of the defendant officers, to facilitate personal service.[10] But plaintiff was not pro se. He was represented by a licensed member of the bar of this Court, and it was incumbent on that attorney to protect plaintiff's rights by seeing to it that the complaint was properly served in a timely manner. To the extent that that was not done, the fault lies not with the defendants or with the Court, but with plaintiff's counsel.

## CONCLUSION

Accordingly, for the reasons stated, the motion of defendants City of Yonkers and City of Yonkers Police Department for summary judgment is granted; the motion of the individual officer defendants for dismissal for lack of timely service is also granted; and the complaint is dismissed as to all defendants.

---

[9] In order to avoid confusion about which defendants have been made parties to the action, when after 120 days from the filing of the complaint one or more defendants have not responded to the complaint and the plaintiff has not sought a default judgment, many judges (including the undersigned) enter an order *sua sponte* notifying the plaintiff that the docket does not reflect service of process, and setting a final deadline by which the plaintiff must serve the non-appearing defendants or face dismissal for failure to prosecute. That was not done in this case. Nothing in the Federal Rules of Civil Procedure, however, requires that an order be entered to remind a plaintiff or his attorney that particular defendants have not been served or have not responded to the complaint.

[10] In similar cases, the undersigned judge has found that municipal attorneys generally recognize that since cities and their police officers have a security interest in keeping information about the residences or duty stations of police officers confidential, officers apprised that such a subpoena may be served will often authorize the City's lawyers to accept service on their behalf.

SO ORDERED.

Dated: New York, New York
       December 18, 2008

_____
GERARD E. LYNCH
United States District Judge